Okay, this is case number 4-160-552, Turner v. Orthopedic & Shoulder Center, for the appellant, Mr. James Ginski, and for the appellee, Peter Brandt and Rachel Brandt, and Mr. Brandt, you are the one to argue, as I understand it. All right. You may proceed. May it please the Court and Counsel, there are two issues of overriding public policy importance raised by this case, the first of which almost sounds rhetorical, and that question is, can an appellate court make a mistake? The very existence of an Illinois Supreme Court would suggest that the answer is yes. The second, I don't think you're going to get any argument on that, and the argument will be on the second issue of public policy concern. Does an appellate court take advantage of an opportunity to correct that mistake? And that is up to you three. Thank you. Are you finished? I am. Did you have any questions, Justice Appleton, Justice Kinnick? I think I understand the point. I think. Well, I want to make sure I understand the point. Is your point that Rogala v. Christie Clinic was the mistake? The answer is yes and no, Your Honor. Rogala, from a health care provision standpoint, is a different era. That was back in the days of HMOs, and it's not as if that opinion itself is that old. It's just that the evolution of health care in this country has evolved rapidly. HMOs are not the players in the health care field that they used to be. Rogala revolves around the construction of the old HMO Act with the old Health Care Services Act, neither of which are in force at this point in time, neither of which are relevant at this point in time. More importantly, in the provider agreement that existed between Christie Clinic and the HMO, the right to assert a lien was expressly preserved, which wasn't done in this case, or the Berry case that this Court just decided. And the answer to your question, quite frankly, is Rogala is distinguishable, but I think it was a mistake. Berry is a mistake. It's not distinguishable, but it's not supportable by the law of this State. Okay. Thank you. Mr. Brandt, now you can proceed. It's a little long, but I'll try and keep it brief. You get points for brevity. I know. And a lot of it was obviously not as important as it was a moment ago. No court that has looked at this issue did what the Circuit Court did here, and that is look at the legislative history of this particular Act. And what we alerted the Court to and what we found was that the exact thing that the appellant is looking for here had been considered by the legislature in 2012. And so there was an amendment that was proposed, House Bill 5823. And in that amendment, the proposal was that a health care provider would be limited in whatever lien action they took to the amount that they had negotiated with either an insurance company or that Medicare or Medicaid or some other public payor had agreed to pay them. That would essentially have abolished, I think, the Lien Act, because there would be no purpose. If you were a care provider, you would collect whatever you had agreed to from Blue Cross or Blue Shield, and at that point in time, there would be no reason to seek a lien for any other amounts. That was rejected. That was voted down. And so I think what the Circuit Court realized was that this issue had been considered by the legislature. The exact issue here today had been rejected. So there's nothing in the Lien Act that prohibited OSC from seeking its lien rights. I mean, there's a Lien Act. The Lien Act gives it some rights to seek recovery for the amounts that it has incurred or the amount the patient has incurred in medical bills. Now, the appellant here has cited the Bamberg case, which is admittedly not binding on this Court. It is a Circuit Court case from Cook County, and that's what they're relying on to a great extent in the brief. Judge Gomolenski said in that opinion that his ruling was limited to the facts of that case. He didn't find that the Lien Act was overruled. He just basically said that once – that the Lien Act essentially was available only to those who had no ability to pay. So in this reading of the Act, that's not what the Act says, and it's not what the Supreme Court said in the case that he cited. There is no such limitation written into the Act. The Rogala case is a case this Court authored back in 2003, and it was a class action suit. It was an appeal from a Section 2619 dismissal. It was an auto truck accident. The patient had an HMO, and the HMO had paid Christie Clinic nothing. They paid Christie nothing because they had a contract to pay a per patient amount for any member who was a member of the HMO. So Christie was paid nothing by the HMO. The HMO asserted a lien of $149,000 against the settlement amount, but Christie also asserted a lien for $28,750. So the HMO contract did not provide Christie with the right of subrogation. There was no – there's nothing in that contract that provided Christie with that right. Similar to the agreement here, Blue Cross and Blue Shield, in that contract that they had with OSC, OSC had not carved out a right of subrogation against the fund of the settlement. Like this case, the patient there, the class, I guess, the representative, was alleging fraud. And this Court found that the Physicians' Lien Act allowed the physicians to attach a lien upon the settlement itself. This Court considered the cases cited by the opponent here, the NC v. AW and Richmond v. Caban, and this Court also relied on the Rogers case in its opinion. And basically, the statement therein was that a wrongdoer should not benefit from the expenditures made by the insured party. And so the wrongdoer shouldn't get the benefit of the fact that one of the – that the injured party had purchased health insurance. The other side of the equation was that the patient shouldn't receive a windfall from seeking damages for the full amount of the medical bills and the care provider only being allowed to recover an amount that they had agreed to, in this case with Blue Cross and Blue Shield, and in that case with the HMO. So the Rogers Court, which this Court cited in Regala, established that the amount of the debt that the tortfeasor had was measured by the amount of reasonable and customary fees. In other words, the full amount of the medical bills. This Court in Regala also established that it's not the patient's debt. This isn't a claim against the patient. It's a claim against the debtor – I'm sorry, it's a debt against the tortfeasor, and it's a claim against the settlement funds. Christie, as I said, had no right of subrogation in its contract. This Court said that didn't matter because the Lean Act allowed for recovery. In this situation, we have this Court's treatment in Regala, and we have a statute that provides a right. This Court recognized where the legislature considered exactly what the appellant was asking for and rejected it. There's an issue that was raised in the brief and below by the appellant about failure to perfect the Lean. There were Lean notices sent to country companies and progressive insurance companies in this case. Summary judgment – this is a summary judgment motion. The plaintiff had to come forth with some evidence. In their brief, the plaintiff doesn't argue that they didn't have actual notice. And in the Ciricione case, which this Court cited, and which both sides have cited in this case, strict adherence to the Lean notice requirements is not required. As I said, neither Turner nor her counsel have argued they didn't have actual notice of these claims. Just to call this down to essentially the cases that have been cited by the appellant, in each one of those cases where an appellate court has found that the Lean right is extinguished, those care providers accepted a sum from an insurance company, a health care insurance company, or an HMO. In every one of those cases where that had happened, the appellate courts have said, you know, you've negotiated, you've agreed to accept $7,000 in return for satisfaction of a $30,000 bill. Ergo, you don't have any more Lean rights at that point in time. That didn't happen here. Our client did not file a claim with Blue Cross and Blue Shield and accepted no monies from Blue Cross and Blue Shield. The Richland v. Cabin case is one in which no funds were accepted by an insurance company. And again, the appellate court said, you have your full Lean rights. This suit was framed as a claim for consumer fraud, or a breach of the Consumer Fraud Act. It seemed to me as I looked at the brief, Your Honors, they've abandoned any contention that the deficiencies noted by the circuit court were not inappropriate.  There's no argument here that I would just say the deficiencies brought up by the circuit court were not even addressed in the brief. So those have been waived. There's arguments about certain clauses of the Blue Cross and Blue Shield agreement with my client. None of those are on point. The only one that might come close is paragraph 3A, which is an indemnity provision. This indemnity provision is exactly like the provision in the Regala case. And the indemnity provision in the Regala case was found not to prohibit the type of action, the Lean action, that my client has filed. There's a contention that there is, I think the circuit court found that all that the appellant had done was file a breach of contract claim, that that was not enough. There is no allegation of deception. The appellant claims that there's a waiver of the statutory Lean rights by contracting with Blue Cross and Blue Shield. There's no case law cited in support of that. Finally, it's alleged that there's extreme and outrageous conduct on the part of my client. What my client did was send a letter out indicating that they were seeking recovery from the settlement fund. I think the circuit court appropriately found that was not the prolonged hounding or extreme measures that are called for to rise to the level of outrageous conduct in a collection action. So in summary, the Regala case is clearly on point here. Counsel, you say it's clearly on point, but the agreement in the Regala case had a subrogation clause, did it not? The agreement in the Regala case, the HMO reserved for itself a right of subrogation. And so that was clear. But the defendant in the case was Christie Clinic. And Christie Clinic did not have in its agreement a right of subrogation. There wasn't any carve out or any provision therein that said also Christie Clinic or a care provider has a right of subrogation. Well, there's no subrogation clause of any kind in this particular case, is there? It's true. That's true. But there's no reference in the Blue Cross and Blue Shield agreement that gives to the care provider a right against a third party who's not party to that agreement. But you're right, there's no subrogation agreement or provision in that agreement that gives to OSC, my client, the right of seeking its lien rights. It doesn't mention lien rights. I guess my response to that would be there's nothing in there that prohibits them also from seeking their lien rights, their statutory lien rights. And so I think that's what the Regala court found too with respect to, or this court found in Regala, with respect to Christie. Because Christie Clinic did not have anything in their agreement with the HMO that said we preserve our rights of subrogation. And that's why this case is on board. Thank you. Thank you. Any rebuttal? Yes, Your Honor. Counsel argues that plaintiff in this case has abandoned her claims under the Consumer Fraud Statute. That's absolutely not the case. The plaintiff has abandoned no rights of action. The defense also indicates that the defendant in this case, orthopedic and shoulder center, did not accept any money from Blue Cross Blue Shield. That's absolutely false. They did. When it came to life that they had, they refunded some, but not all of it. So they did keep some. And what they received was payment pursuant to their written contract. There's another assertion that there's a windfall in a case like this. There absolutely is not. I run a small firm in Bloomington. I provide major medical health insurance to my employees. I pay the entire premium. They don't contribute directly. But to the extent that that insurance is expensive, and it is, they don't contribute. They don't get bonuses. They don't get raises. So indirectly, they're paying for that premium. In addition to the premium, there's a $5,000 annual deductible that they have to pay. In addition to that deductible, they have to pay a 20% co-pay. If they're fortunate enough to make a recovery in a case like this, then they still have to reimburse the health insurer, which in my case is not Blue Cross Blue Shield. It's Health Alliance out of Champaign-Urbana. But there's no windfall. There's never a windfall. Counsel indicates that what distinguishes this case from the other cases, from the first district, the Bamberg case decided by Judge Gomolenski at the trial court level, or the second district cases, and there's four of them, is that there was no discussion of the legislative history with respect to the current version of the Health Care Services Lien Act. But the legislative history is completely irrelevant, and so is the Act itself. Plaintiff in this case has never alleged or argued that Dr. Larry Lee and his practice doesn't have lien rights. He does. But he's also got the right by contract to waive those lien rights, which he did. The wording in the Blue Cross Blue Shield provider agreement, which contains his signature, that wording couldn't be broader in terms of releasing any claims against the patient, the insurer. The purpose of the Lien Act doesn't apply in these cases. The purpose of the Lien Act is to ensure some type of compensation to a health care provider when there is no insurance. Okay. Thanks to all of you. The case is submitted, and the court stands in recess until further call.